CR

**RECEIVED**

JUL 21 2017 PO

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

### IN THE UNITED STATE DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LINDA SCULLY, an individual<br>MARK SCULLY, an individual and<br>HAROLD SCULLY an individual;<br><br>**Plaintiffs,**<br><br>v.<br>NATHAN GOLDENSON, in his individual and<br>official capacity;<br>JAMES BURTON, in his individual and official<br>capacity;<br>RICHARD GASIK, in his individual and official<br>capacity;<br>HANNY PEI, in her individual and official capacity;<br>ALEXA RAINES, an individual;<br>ROBERT HARRIS, in his individual and official<br>capacity;<br>RICHARD MCGREAL, an individual;<br>ST FRANCIS HOSPITAL, an Illinois not for profit<br>corporation;<br>CARLTON AT THE LAKE, INC, an Illinois not for<br>profit corporation;<br>PRESENCE SAINT JOSEPH HOSPITAL -<br>CHICAGO, an Illinois not for profit corporation;<br>BURROWS MOVING COMPANY, INC., an Illinois<br>corporation;<br>LOVING HANDS HOSPICE, INC. an Illinois<br>Corporation<br>GLOBETROTTERS ENGINEERING<br>CORPORATION, an Illinois Corporation;<br>JOHN DOE #1;<br>JANE AND JOHN DOES NOS. 2 TO 9 & 10 to 17;<br>JOSEPH MONAHAN, an individual;<br>AMY MACCARTY, an individual;<br>JOSEPH W. PIEPER, an individaul;<br>ASHLEY COPPOLA, an individual<br>JULIE FONTANAROSA, an individual; and<br>TOM LEFKO, an individual.<br><br>**Defendants** | Case No. 17 CV 1325<br><br>Judge Charles P. Kocoras<br><br>Jury Trial Demanded |

## SECOND AMENDED
## COMPLAINT FOR DAMAGES
## UNDER 42 USC § 1983–DEPRIVATION OF RIGHTS ET AL.

Now comes your Plaintiffs, Linda Scully, Harrold Scully and Mark Scully, ("Scully Plaintiffs") and herewith files the above cause of action under 42 USC § 1983, Wrongful Eviction, False Arrest, Trespass upon Chattels, Conspiracy and Intentional Infliction of Emotional Distress against the following defendants: Nathan Goldenson, James Burton, Richard Gasik, Hanny Pei, Alexa Raines, Robert Harris, Richard MaGreal, St. Francis Hospital, Carlton at the Lake, Inc., Presence St. Joseph Hospital - Chicago, Burrows Moving Company, Inc., Loving Hands Hospice, Inc., Globetrotters Engineering Corporation, John Doe No. 1, John Does 2 to 9, Joseph Monaghan, Amy MacCarty, Joseph W. Pieper, Ashley Coppola, and Tom Lefko.

**The litigants:**

1.    Plaintiff Linda Scully is a Cook County Resident who is currently disabled who previously worked as a Cook County Sheriff Deputy and has worked in the security and construction trades.  Ms. Scully was the first professional woman boxer in the US.

2.    Plaintiff Mark Scully is a Cook County Resident who is currently disabled but worked in a family business and in the security trade.  Mr. Mark Scully was also a professional boxer.

3.    Plaintiff Harrold Scully is a Cook County Resident who is retired and was part owner of an electronics repair shop and worked in the security trade.  Mr. Harrold Scully was also a professional boxer.

4.    Deft. Nathan Goldenson, upon information and belief is a Cook County Resident residing at: 5018 N. Mozart Ave, Chicago, IL 60625, and does business in Cook

County for the Office of Public Guardian as an attorney.

5.  Deft. James Burton, upon information and belief is a Cook County Resident who has a place of business at: 69 W. Washington St, 7th Floor, Chicago, IL 60602.

6.  Deft. Richard Gasik, upon information and belief, is an independent contractor for the OPG, and does business in Cook County and all of the actions complained of regarding him occurred in Cook County, Illinois.

7.  Deft. Hanny Pei, is an Illinois licensed attorney doing business at Dutton & Casey, PC, 79 W. Monroe St, #1320, Chicago, IL 60603.

8.  Deft. Alexa Raines, is a licensed social worker, doing business at: Presence St. Francis Hospital, 355 Ridge Ave, Evanston, IL 60202 in Evanston, Illinois.

9.  Deft. Robert Harris, upon information and belief is a Cook County Resident, and doing business at the OPG, 69 W. Washington St, 7th Floor, Chicago, IL 60602.

10. Defendant Richard McGreal is an individual who resides in the County of Cook, Illinois at 4713 106th Pl, Oak Lawn 60453, and does business in the State of Illinois.

11. Defendant Presence St. Francis Hospital is an Illinois Not for Profit Corporation ("NFPC") located in Evanston, Illinois with an address of 355 Ridge Ave, Evanston, IL 60202 and does business in Cook County, IL.

12. Defendant Carlton at the Lake, Inc., is an Illinois NFPC doing business in Cook County, Illinois and its address is: 725 W Montrose Ave, Chicago, IL 60613.

13. Defendant Presence Saint Joseph Hospital is an Illinois NFPC doing business at: 2900 N Lake Shore Dr, Chicago, IL 60657.

14. Defendant Burrows Moving Company, Inc. Is an Illinois corporation doing

business at: 6542 N Clark St, Chicago, IL 60626.

15. Defendant Loving Hands Hospice, Inc., is an Illinois Corporation doing business in Cook County, IL and its address is: 6535 N Olmsted Ave, Chicago, IL 60631

16. Defendant Globetrotters, Inc. Is an Illinois Corporation doing business in Cook County, Illiniois doing business at: 300 S. Wacker Dr., #400, Chicago, IL 60606.

17. Defendant John Doe #1 is an individual working as an independent (HVAC) contractor for the OPG, and does business in Cook County and the acts complained about regarding him occurred in Cook County, Illinois.

18. Defendants John and Jane Does #2 to #9 are individuals working either directly for the OPG wrongfully evicting family members, or are the agents of the OPG or those in privity with them.

19. Defendants John and Jane Does 10 to 17 are the eight (8) arresting officers of the Chicago Police Department

20. Defendant Joseph Monahan is an Illinois attorney doing business within Cook County and his work address is: 55 West Monroe, # 3700, Chicago, IL 60603.

21. Defendant Amy McCarty is an Illinois attorney doing business at: 55 West Monroe, #3700, Chicago, IL 60603.

22. Defendant Joseph W. Peiper is an Illinois attorney who does business at 205 W. Randolph St, #1250, Chicago, IL 60606.

23. Defendant Ashley C. Coppola is an individual who does business at 205 W. Randolph St, #1250, Chicago, IL 60606.

24. Defendant Julie M. Fontanarosa is an individual who does business at 205 W. Randolph St, #1250, Chicago, IL 60606.

25.    Defendant Tom Leko, is a real estate developer doing business in Cook County, Illinois and his place of business is: 6849 N. Keeler Ave, Lincolnwood IL 60712.

## JURISDICTION AND VENUE

26.    This honorable court has jurisdiction over the above parties because each either resides in Cook County Illinois or does or has done business within Cook County, Illinois or they participated in the actions complained of herein at all times relevant to this cause of action.

27.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367 for Plaintiff's 42 USC § 1983 claim. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, or do business within this judicial district, and/or the events giving rise to the claims asserted herein occurred as well.  This court has jurisdiction for the 42 USC 1983 claim under 28 USC § 1343(a)(1-3) and for 42 USC § 1985 under 28 USC § 1343(a)(1-2).

28.    This court has supplemental jurisdiction for Plaintiff's common law claims of Abuse of Process, Malicious Prosecution, False Arrest, Civil Conspiracy, Trespass to Chattels and Wrongful Eviction and Intentional Infliction of Emotional Distress under 28 USC § 1367.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

### A. The Abusive Probate Guardianship Proceeding

29.    On or about July 22, 2013, Plaintiff Linda and her fiancé John Bisbikas ("Caretaker John"), caretaker to Mary Jane Teichert ("Mother Mary"), took Mother Mary to Deft. St. Francis Hospital because she had been wandering the neighborhood, and

had been found, but appeared to be overly warm and dehydrated. Plaintiff Linda and Caretaker John desired to have her checked out to ensure that nothing further was wrong, so they called an ambulance to take her to St. Francis Hospital. Deft. St. Francis admitted Mother Mary Jane and later Plaintiff Linda returned, she found that her mother had been admitted to the hospital and had been placed in a room where had she been drugged and was in 4 point restraints and in obvious distress. She was filthy and had a dirty diaper on.

30.    Upon information and belief, Mother Mary remained a prisoner at Deft. Francis for at least 4 months, and never saw the light of day, she was isolated from about 20 family and friends—everyone was told for 4 months, she could not see her family, friends or coworkers. In addition, she was never given her eye glasses, although they were brought to her to be given to her. Mary Jane was never able to see for the rest of her life.

31.    Four months later, Mother Mary was sent to Deft. Carlton at the Lake ("Deft. Carlto"), which turned out to be nothing but a prison and slum for the elderly and disabled. Again, she was isolated and drugged with no phone in her room. No one, except for Deft. McGreal, and Plaintiff Mark was allowed to see Mother Mary Jane.

32.    Mother Mary's nails were always dirty, her hair was always dirty, she was smelly, and unknown persons were allowed to steal all her

33. Deft. McGreal was part of the aforementioned abusive actions, he allowed the abuse to continue, he threatened each of Plaintiffs Linda, Harrold and Mark and Caretaker John that if they made any complaints, there would be retaliation—no visitation, or worse.

34.  Mother Mary spent approximately 17 months at the Deft. Carlton being abused, isolated, drugged with illegal chemical restraints, she was held against her will and she never saw the light of day again.

35.  After Deft. Carlton, she went to Deft. St. Josephs for an unknown length of time. The Guardianship file was sealed illegally and without notice to anyone.  No motion was prepared or finding of fact made, the Order to Seal the File was simply issued by Order of the Court one day unknown to any of the Plaintiffs named herein.  None of the Plaintiffs were allowed to see where Mother Mary was or when she was transferred or her state of health.  All of Plaintiff Linda's POA's for Health Care and Property were summarily terminated by the Guardianship court, without notice or hearing.

36.  After Carlton and St. Josephs, Mother Mary was transferred to the care of Deft. Loving Hands Hospice Inc. where she was further abused, drugged and isolated with no visitors until the day she died.

**B.  The False Arrest and Imprisonment**

37.  After the Guardianship case was brought, Plaintiff Linda was arrested at least 8 times, upon direction of Deft. Goldenson, and others at the OPG for attempting to oust dangerous squatters ("Squatters") from her mother's apartment building located at 1639 W. Lunt Ave. in Chicago, Illinois ("Subject Premises"). No fewer than eight (8) police officers were told the allegations were false.

38.     Plaintiff Linda had the following items stolen from her during the guardianship by Deft. Burrows Moving and others acting at the direction of the OPG: fine jewelry and art and other items, silverware, china and other valuable items.  Plaintiff Harrold had many tools stolen from the premises by the squatters because the property was under

rehab. Plaintiff Mark had valuable medical equipment, artwork and other valuable items stolen by the Squatters. The Squatters and the OPG attorneys, Defts. Goldenson, Gasik and Burton, and Burrows Moving all conspired together to destroy, vandalize, convert, steal and misappropriate numerous items of personal property belonging to all Plaintiffs.

39. Upon and belief, Plaintiff Linda was arrested with the assistance of Defendants Nathan Goldenson and James Burton and Richard Harris for false reports of arrest and assault, none of which occurred, and all of which were eventually dismissed.

**C. ADA Retaliation**

40. During the time that Plaintiff Mark Scully was visiting with his mother, he was subjected on a continual basis to a barrage of insults, defamatory comments, and threats. He was told if he filed any complaints about the treatment of his mother, or allowed Plaintiff Linda or Caretaker John to talk to, visit with or in any manner communicate with Mother Mary, his visiting privileges would be terminated permanently.

41. Plaintiff Harold was also told that if he filed any complaints about the treatment of his mother, or allowed Plaintiff Linda or Caretaker John to talk to, visit with or in any manner communicate with Mother Mary, his visiting privileges would be terminated.

42. Plaintiffs Harold and Mark were told this by Defts. Goldenson and Burton, on the direction of Richard Harris, as well as Deft. McGreal. Defts. St. Francis and Carlton also told the Plaintiffs that they could not complain about the abuse or they would be retaliated against.

43. Plaintiff Mark was repeatedly made fun of by Carlton staff. They would talk about

Plaintiff Mark as if he was not in the room; they would say that Plaintiff Mark should be put in an institution, away from his mother. Plaintiff Mark was constantly afraid that they would do this to him. Plaintiff Mark was continually subject to rude threats, derogatory and insulting comments, all of which are prohibited by the Americans with Disabilities Act.

## D. Wrongful Eviction

44. Sometime in January, 2014, Plaintiffs Linda and Mark received a phone call from the OPG that they were to vacate their own apartment building immediately. Plaintiffs Mark and Linda had lived on the Subject Premises with Mother Mary for decades. The OPG, together with other defendants cause a vendor (John Doe #1) to enter the Subject Property in July of 2013 when he cut a main boiler pipe for heating so the Subject Premises would be without heat. All OPG Defendants knew that at the time Linda and Mark Scully were tenants in the building and both were disabled. Eventually, winter came, and the water pipes in the Subject Property froze and broke and freezing, and icy freezing water ruined most of the Property, rendering it uninhabitable.

45. None of the OPG Defendants filed a proper eviction proceeding against Mark and Linda Scully. The Subject Property had been placed into a vested trust at Chicago Title and Trust, ("CT&T Land Trust") and upon information and belief, Mark and Linda Scully were the beneficiaries of a vested Land Trust and had the right to be on the premises. They were to receive the Subject Property afer their Mother had passed. This did not happen. The court summarily broke the vested Land Trust and sold the Subject Property, all without Notice to the beneficiaries and a hearing. Plaintiffs Mark and Linda Scully were entitled to Notice, Service by the Sheriff, a Petition to Invade the

Trust, Discovery and a Hearing on the Merits.

46. The OPG conspired with the City of Chicago department of buildings to have Plaintiffs Mark and Linda summarily evicted upon 4 hours notice. No advance notice was provided. Plaintiffs Mark and Linda were simply told they had to move in 4 hours or their property would be put in the trash. If they stayed over 4 hours, they would be arrested for Criminal Trespass.

**E. Intentional Infliction of Emotional Distress**

47. All plaintiffs were continually subject to a barrage of negative comments, nasty defamation, false light, slander and libel against all the Plaintiffs.

48. OPG Defendants told the Plaintiffs to continually be quiet, they falsely and maliciously told the court that all the Defendants abused Mother Mary, they made and filed false reports to Catholic Charities–all of which were dismissed as unfounded–that Plaintiffs financially, physically and emotionally abused Mother Mary Jane Teichert her entire life.

49. Each of Defts. Monahan, MacCarty, Pieper and Coppola and Fontanarosa told the court that Plaintiffs had abused their Mother and given her cocaine and alcohol Mother Mary never drank alcohol and never took any illegal substances in her life. Deft. Fontanarosa secreted away the Guardianship file, deny Plaintiffs their due process rights. Toxicology reports from Deft. St. Francis showed no intoxicating substances in Mother Mary's blood.

50. The OPG defendants falsely accused Plaintiff Linda of stealing a $4,000 statute, when in fact the statute did belong to Linda per codicil to the will. The OPG, without notice or due process, broke into Plaintiff Linda's apartment and took valuable rugs,

Page 10 of 24 First Amended Complaint - Scully v. Goldensen, et al.

artwork, fine jewelry, dishes, personal property, valuable vases, pool tables, fine books, weight exercise equipment. The OPG went through Plaintiff Linda's apartment, together with Deft. Burrows, taking whatever they wanted. The theft, vandalism and unauthorized access to a private apartment caused Plaintiffs Linda and Mark great emotional distress, resulting in anxiety attacks, panic attacks, depression, sleepless nights and an inability to focus or carry on normal activities. In addition, Plaintiff Mark is handicapped, and suffered seizures and spasms. The lack of hot water and heat for long months cause a great deal of emotional distress with Plaintiffs Mark and Linda.

51.     The conduct by the OPG Defendants and conspiracy with others, most notably John Doe #1 and John Does #2 to 9 was extreme and outrageous, intended to cause severe emotional distress and in fact did cause severe emotional distress to Plaintiffs Mark and Linda Scully. John Does #2 to 9 directly participated in the wrongful eviction of Linda and Mark Scully from the Subject Premises. They had no court order, they served no papers to evict. Rather, they used the police to threaten arrest in order to evict Mark and Linda Scully.

52.     As a result of the above tortuous actions, all Plaintiffs have suffered and continue to suffer from severe acute and chronic adverse psychological effects.


**F.  Pattern or Practice - Office of Public Guardian**

53.     That the OPG was appointed as Plenary Guardian over Mother Mary on or about July of 2013 by falsely claiming that Plaintiff Linda was giving her mother cocaine and alcohol and in other manners abusing her. They made repeated statements to the court that Mother Mary had been subject to abuse by all her children—Mark, Harold and

Linda for years and had been financially exploited. All of these claims were false and unfounded. In fact, the Caretaker John had worked for Mother Mary for years and always had good evaluations of her care and comfort by the State agency he was employed with.

54.     That the OPG has a long history of making false claims to take over guardianship cases and then engages in the following wrongful conduct; a) summary wrongful eviction of a loved one; b) wrongful eviction of someone who actually has title to the Subject Property; c) isolation of a Disabled Person; d) issuance of a DNR when the Disabled Person has not provided authorization and there is no court order; e) dispensing psychotropic drugs without the authorization of the Disabled Person or a court order; and e) allowing the theft, conversion and vandalism of the Disabled Person's Real Estate without filing an insurance claim or police report or absconding with insurance proceeds; and f) drugging or narcotizing the Disabled person to death without a court order and summary orders issued without Due Process.

## COUNT I
## 42 U.S.C. § 1983
## DENIAL OF DUE PROCESS RIGHTS

55.     Plaintiffs herewith incorporate each of the preceding paragraphs of this Complaint as if fully set forth herein.

56.     This count is brought against Defendants Goldenson, Burton, Gasik, and Harris ("OPG Defendants") and John and Jane Does 10 - 17 or Arresting Officers.

57.     As described more fully above, all of the OPG, under color of law and within the presumed scope of their employment and/or assignment by the court, denied Plaintiffs Linda and Mark Scully their constitutional rights to: due process and service of a

complaint, notice, discovery and jury trial regarding the wrongful eviction from the Subject Property on Lunt Ave in Chicago Illinois and all falsely and maliciously represented to the City Attorneys that the Subject Property was not inhabitable because it had no heat or water, when in fact, the OPG Defendants in fact caused the heating pipe to be cut and the Subject Property to become uninhabitable. They further filed false proceedings in the guardianship court that Plaintiffs Mark and Linda was not entitled to reside on the Subject Property when in fact, they were so entitled. An Order of Contempt issued against Plaintiff Linda in the Guardianship Case 13 P 4339 without any service of process upon her, Notice, Petition or Hearing.

58.    In addition, upon information and belief, the OPG Defendants had Plaintiff Linda repeatedly falsely arrested for alleged assault and battery from July 2013 to Jan 2014, when in fact no assaults or battery had occurred and later the charges were all dismissed. These actions were malicious, contemptuous and without any regarding for Plaintiff Linda's due process and civil rights.   The arrests was wrongful and illegal, based upon malicious falsehoods, with the deliberate intent to intimidate Plaintiff Linda from filing complaints with the Illinois Dept. of Health and other state agencies that her mother was being abused.

59.    The denial by courtroom actors Goldenson, Burton, Gasik, Pei to ban Plaintiff Linda from visiting with her beloved mother for over 17 (seventeen) months of Guardianship was a further a breach of her due process rights under color of law and was malicious, wilful, contemptuous and done with complete disregard for her human and civil rights.

60.    In addition, during the Guardianship Case, it was apparent that Mother Mary was

being drugged with strong psychotropic drugs against her will and without her consent. This caused her dementia to become exacerbated and for her internal organs to deteriorate. This was done without court order and this was malicious, contemptuous and wilful.

61.     As an additional matter, Plaintiffs Mark and Linda were wrongfully evicted from their apartment on Lunt Ave in Chicago. John Does Nos. 2 to 9 to entered her apartment and wrongfully stole and/or damaged numerous items of her personal property, never to be seen again. Plaintiffs Linda and Mark complained repeatedly to Judge McGury that Defendants Burrows Moving Company, John Does Nos. 2 to 9, on the authority of Goldenson, Burton, Gasik, Pei, Harris and others ransacked, vandalized, and stole numerous items of Plaintiff's personal property.

62.     Each of the above actions comprise a denial of Due Process rights of Plaintiff Linda under 42 USC § 1983, they were committed by state actors—the OPG and those acting in privity with them, namely the Arresting Officers, entitling all Plaintiffs to damages, punitive damages and reasonable attorneys fees inasmuch as the behavior was contemptible, undertaken with malice aforethought, wilfulness and reckless indifference to the rights of others. Plaintiff Linda is also entitled to her attorneys fees.

## COUNT II
## ABUSE OF PROCESS

63.     Plaintiffs herewith incorporate each of the preceding paragraphs of this Complaint as if fully set forth herein.

64.     This count is against the OPG Defendants and the Arresting Officers.

65.     The OPG Defendants either filed false complaints against Plaintiff Linda, or who

conspired with others, namely the Squatters, to file numerous and repeated false police reports against Plaintiff Linda for assault and battery, causing her to be falsely arrested eight times (8). The police reports were utterly false and fictitious, and the filing of repeated false police reports was wilful, malicious, contemptuous, and without regarding for Plaintiff Linda's human and civil rights. All eight (8) cases were eventually dismissed.

66. The Defendants conspired together to drive Plaintiffs Mark and Linda out of probate court, preventing them from filing reports of abuse with the authorities and police, all were a pretext to prevent Plaintiffs Linda and Mark from asserting their First Amendment rights to protect their own mother from abuse and neglect. The Defendants named above and other individuals embarked upon a steady campaign to embarrass, intimidate and harass Plaintiffs Linda and Mark by damaging their apartments and by encouraging and directing the Squatters to file numerous false police reports against her.

67. The abuse of process was for the ulterior motive of preventing Plaintiffs Linda and Mark from coming to court and protecting their mother. In addition, these Defendants conspired together, talked with one another, planned, schemed and agreed to make certain that Plaintiff Linda was embarrassed, humiliated and intimidated from asserting her rights in Probate court and they all sought to harass, intimidate and embarrass her in criminal court for the purposes of driving her out of the courtroom.

68. Accordingly, each of these defendants has committed Abuse of Process against Plaintiff Linda resulting in her needlessly attending numerous criminal court appearances for no reason over the course of a year. Consequently, she is entitled to

her damages and punitive damages inasmuch as the behavior was contemptible,
undertaken with malice aforethought and wilfulness and with reckless indifference to
the rights of others.

## COUNT III
## MALICIOUS PROSECUTION

69.     Plaintiffs herewith incorporate each of the preceding paragraphs of this
Complaint as if fully set forth herein.

70.     This count is against the OPG Defendants and the Arresting Officers.

71.     Plaintiff Daughter Linda was the subject of a numerous criminal proceedings
brought against her in the Criminal Courts.  She was acquitted after a bench trial, and
the alleged victims never produced any evidence or testimony of any assault or
battery.   This is despite the fact they filed false police reports that Plaintiff Linda had
committed assault and battery against the Squatters, when in fact she had not done
so.

72.     Accordingly, each of these defendants has committed Malicious Prosecution
against Plaintiff Linda entitling her to her actual damages as well as punitive damages
inasmuch as the behavior was contemptible, undertaken with malice aforethought,
wilfulness and with reckless indifference to the rights of others.

## COUNT IV
## FALSE ARREST

73.     Plaintiffs herewith incorporate each of the preceding paragraphs of this
Complaint as if fully set forth herein.

74.     This count is against the OPG Defendants and the Arresting Officers.

Page 16 of 24 First Amended Complaint - Scully v. Goldensen, et al.

75. Plaintiff Daughter Linda was the subject of a numerous criminal proceedings brought against her in the Criminal Courts. She was acquitted after a bench trial each time charges were brought against her based upon false police reports and allegations made against her. This is despite the fact they, together with the Squatters, filed false police reports that Plaintiff Linda had committed assault and battery against the Squatters, when in fact she had not done so.

76. Accordingly, each of these defendants has committed False Arrest against Plaintiff Linda entitling her to her actual damages as well as punitive damages in attending numerous court appearances for no reason over the course of a year, inasmuch as the behavior was contemptible, undertaken with malice aforethought, wilfulness and with reckless indifference to the rights of others

**COUNT V**
**42 USC § 1985(3)**
**CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS**

77. Plaintiffs herewith incorporate each of the preceding paragraphs of this Complaint as if fully set forth herein.

78. This count is against all the Defendants. Plaintiff Daughter Linda was the subject of a numerous criminal proceedings brought against her in the Criminal Courts. She was acquitted after a bench trial. This is despite the fact that all defendants conspired to file false police reports that Plaintiff Linda had committed assault and battery against the Squatters, when in fact she had not done so.

79. Accordingly, each of these defendants has committed a violation of 42 USC 1985(3) against Plaintiff Linda entitling her to her damages in attending numerous court appearances for no reason over the course of a year, summarily terminating her

POAs, as well as punitive damages and reasonable attorneys fees inasmuch as the behavior was contemptible, undertaken with malice aforethought, wilfulness and with reckless indifference to the rights of others.

## COUNT VI
## Tresspass to Chattels

80.    All Plaintiffs herewith allege each of the foregoing paragraphs as if set forth fully herein.

81.  This count of Tresspass to Chattels is brought against Defts. Goldenson, Burton, Gasik, Pei, Harris, Burrows Moving Company, Globetrotters Engineering, and John Does 1 to 9.

82. During the summer of 2013, the OPG Defts together with Globetrotters conspired with and hired a heating contractor, John Doe No. 1 to cut a heating pipe at the Subject Property causing the heat to stop functioning. Subsequently, during winter, the water pipes froze and broke, destroying the interior contents of the Subject Premises.  The OPG knew of this and that Pltfs. Mark and Linda were disabled.

83.  After destroying the Subject Property, Plaintiff Linda Scully received a phone call from the OPG that she had to leave the Subject Premises in four (4) hours.  She was never served with any papers or Notices to Evict or Vacate.  Accordingly, her due process rights were violated and so were those of Plaintiff Mark as both were Wrongfully Evicted.

84.  In addition, the OPG defendants, together with defendant Burrows Moving Company, came into the private apartments of Linda and Mark Scully, ransacked the Subject Property of all valuable items.

85. The above actions comprise Trespass to Chattels, entitling all Plaintiffs to their actual damages plus punitive damages inasmuch as the actions were wilful, malicious and without regards for Plaintiffs' due process rights.

## COUNT VII
## WRONGFUL EVICTION

86.    Plaintiffs herewith incorporate each of the preceding paragraphs of this Complaint as if fully set fort herein.

87. This count is against Defts. Goldenson, Burton, Gasik, Pei, and Harris.

88. In January of 2014, Plaintiffs Mark and Linda received a phone call from the OPG that they had to vacate the Subject Property in four (4) hours. They had not been provided with any Notices of Eviction, or with an Eviction Complaint by the Sherrif, and the eviction was in fact wrongful.

89. The OPG Defendants had caused significant damage to the Subject Premises by destroying the heating system, allowing water pipes to break, thereby effectively destroying the habitability of the Subject Premises. The OPG in January 2014, ousted Plaintiffs Linda and Mark without any Due Process of law.

90. The eviction of Plaintiff Mark and Linda Scully was wrongful and in derogation of the CRLTO provisions that a landlord must make repairs, must provide heat and hot water, and in derogation of the US and Illinois constitution that defendants in an eviction proceeding are entitled to a Notice of 30 days to quit the premises, plus a Eviction and Detainer Complaint served by the Sheriff or a duly licensed process server.

91. Hence the Jan. 2014 eviction of Plaintiffs Mark and Linda Scully was wrongful,

unconstitutional, done with malice and in wilful disregard of the human and civil rights of others, entitling Mark and Linda Scully to their actual damages, plus punitive damages and costs.

**COUNT VIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

92.    Plaintiffs herewith incorporates each of the preceding paragraphs of this Complaint as if fully set fort herein.

93.    This count is brought against all of the Defendants enumerated in the above case caption.

94.    That the OPG defendants Goldenson, Burton, Gasik and Harris Defendants, together with the Squatters, caused Plaintiff Linda to be the subject of eight (8) False Arrests, Abuse of Process, Malicious Prosecution, and 42 USC § 1983, thereby denying her Due Process Rights, subjecting her to numerous lengthy and unnecessary court room proceedings, resulting in anxiety or panic attacks, depression, sleepless nights, nightmares, depression and constant worrying. Their conduct was extreme and outrages and designed only to inflict severe emotional abuse upon Pltf. Linda.

95.    The OPG Defendants subjected the Plaintiffs Linda and Mark extreme and outrageous actions, namely: numerous court room proceedings in Guardianship where Pltf. Linda was told she could not see her own beloved Mother Mary Jane, she could not become her guardian, her property and her mother's property was stolen, converted and vandalized by the Defendants and by their agents and those in privity with them. Plaintiffs Linda and Mark were told they could not report the abuse of their mother, the drugging, the isolation, the smelly dirty place Mother Mary was housed in, her dirty, foul smelling condition, and that Mother did not consent to psychotropic drugs

or Hospice or a DNR. The conduct of these defendants was extreme and outrageous, and designed only to severely abuse all the Plaintiffs, and it did in fact produce severe psychological damage to the Plaintiffs.

96.     That because each time Plaintiffs Linda and Mark were not afforded due process, their Constitutional Rights and her right to protect her mother from an abusive guardianship ending in her mother's wrongful death and murder, both Plaintiffs Linda and Mark have suffered the severe adverse psychological conditions noted above. The denial of basic Constitutional rights is extreme and outrageous designed only to inflict severe emotional abuse on all Plaintiffs, and it did in fact inflict severe emotional distress.

97.  Defts.  Monahan, MacCarthy both intentionally set into place a wrongful and abusive guardianship proceeding. They repeatedly told lies and falsehoods in the courtroom that the Plaintiffs Scully abused their mother by plying her with drugs and alcohol, when in fact they either knew or should have known that Mary Teichert's toxicology report  came back negative for alcohol and illegal substances.  Instead, they persisted in a campaign to malign and smear the good reputations of protective family members Linda, Mark and Harold Scully in favor of an estranged distant family member, Richard McGreal and directly cause severe and extreme emotional abuse to Plaintiffs Mark and Linda.  Their conduct was extreme and outrageous and they fully intended to, and did in fact, cause severe emotional distress to all Plaintiffs herein.

98.  Defendant Fontanarosa also repeated the same lies and fabrications, plus she absconded with a court file, illegally brought it into the courtroom via the front door without being accompanied by a file clerk, refused to answer the Judge's questions of

where the file came from, and then the file disappeared soon after that, never to be

seen again, and now it is late February of 2017.    The lies told were malicious and

wanton, designed to inflict emotional distress upon each of the Plaintiffs, and the lies

did in fact produce severe emotional distress upon all Plaintiffs.

99.  Globetrotters conspired with the OPG to cut the heating pipe, deprive Plaintiffs

Linda and Mark of heat so that the water pipers froze and broke in late fall 2013. This

action was extreme and outrageous, it was intended to inflict severe emotional distress

upon the Plaintiffs, and it did in fact do so.

100.  Burrows conspired with the OPG to periodically ransack the Subject Premises of

valuable times of personal property.  This action was extreme and outrageous, it was

intended to inflict severe emotional distress upon the Plaintiffs, and it did in fact do so.

101.  Defts MacGreal, Carlton at the Lake, St. Francis, Alexa Raines, St. Joseph and

Loving Hands each isolated Mother Mary from all the Plaintiffs, and upon information

and belief, illegally chemically restrained her, isolated her from 20+ friends and family.

102.  Deft. Tom Lefko, in conspiracy with the OPG Defendants, conspired to purchase

the Subject Property for pennies on the dollar, knowing it has been distressed and put

into ruins by the OPG, he took advantage of the illegal and felonious actions willingly

and with malice, engaging in a fraud upon the court and upon each of the Plaintiffs.

103.  The actions of all the defendants was extreme and outrageous and the

defendants, individually and severally intended to cause great emotional distress to

Plaintiffs, and in fact each Plaintiff suffered extreme or severe emotional distress which

was directly due to the outrageous actions of each of the defendants, individually or in

a concerted action actually and proximately caused severe emotional distress to the

Plaintiffs.

104.   Each of the above actions comprise Intentional Infliction of Emotional Distress,

entitling Plaintiffs to their actual damages, punitive damages and costs inasmuch as

the behavior was contemptible, was undertaken with malice aforethought, and

wilfulness and with reckless indifference to the rights of others.

A Declaration in support of this Second Amended Complaint is attached hereto as

Exhibit A.

WHEREFORE, Plaintiffs Linda, Harold and Mark Scully respectfully requests that

this Honorable Court award them their actual damages, punitive damages and

reasonable attorneys fees in the above cause of action, in an amount of not less than

$3 million for actual and punitive damages, against each defendant, jointly and

severally.

RESPECTFULLY SUBMITTED,

Linda Scully, pro se

Mark Scully, pro se

Harold Scully, pro se

Prepared by:

Linda Scully
Mark Scully
P.O. Box 481081

Niles, IL 60714

Harold Scully
508 E Camp McDonald Rd
Prospect Hts, Illinois 60070